IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **NATHANIEL M. WILLIAMS,** : | |
|     Plaintiff, : | |
| : | |
| v. : | **CIVIL ACTION NO. 25-CV-2913** |
| : | |
| **REMENGTON HOSPITALITY,** *et al.,* : | |
|     Defendants. : | |

<u>**MEMORANDUM**</u>

**PEREZ, J.**                                                                                     **OCTOBER 14, 2025**

      Nathaniel M. Williams commenced this *pro se* civil action alleging claims of employment discrimination, naming as Defendants Remington Hospitality, David Sheets, and Yvette Rivera.  He also filed motions to proceed *in forma pauperis* (ECF No. 1), and to have counsel appointed (ECF No. 3).  For the following reasons, the Court will grant Williams *in forma pauperis* status and dismiss the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  The motion for appointment of counsel will be denied without prejudice.  Williams will be granted leave to file an amended complaint if he can cure the deficiencies noted by the Court.

**I.     FACTUAL AND PROCEDURAL ALLEGATIONS**[1]

      Williams filed his Complaint using the Court's preprinted form for use by unrepresented litigants to file employment discrimination claims.  By checking boxes on the form, he indicates that he is bringing claims under Title VII of the Civil Rights Act of 1964 (Title VII").  (ECF No. 2 at 1.)  Williams, who is African American, states that he worked as Executive Chef and

---

[1] The allegations are taken from Williams's form Complaint and attached documents (ECF No. 2), as well as his apparent inquiry to the Equal Employment Opportunity Commission (EEOC) and Notice of Right to Sue Letter, which were submitted with the Complaint as an exhibit (ECF No. 2-1).  The Court adopts the sequential pagination supplied by the CM/ECF docketing system.

Department Head of the Food and Beverage Department at the Sheraton Suites Philadelphia International Airport.  (ECF No. 2 at 2; ECF No. 2-1 at 3.)  He alleges that Defendant Remington Hospitality took over management in February 2024, (*see* ECF No. 2-1 at 2), and that Defendant David Sheets became the Task Force/Interim General Manager.  (ECF No. 2 at 7.)  Within two weeks of Sheets taking on that role, he terminated Williams from his job in front of two other managers.  (*Id*. at 7.)  Prior to that, Williams had been absent one day from work.  (*Id*. at 8.)  Williams allegedly notified Sheets and another manager of his absence around 3 A.M. the day that he would be absent.  (*Id*.)  Williams scheduled a newly-hired cook to "open" and handle the morning shift.  (*Id*.)  Williams had trained the cook, who had experienced a full shift before, and the morning was not expected to be busy.  (*Id*.)  Williams claims that he took sick leave for the day, and that no one "contested" his email or informed him that he would be needed.  (*Id*.)  When Williams returned the next day, he was "blindsided" in a meeting when he was fired.  (*Id*.)

Williams contacted Sheets twice in the week and a half after his termination, but Sheets "blew [him] off."  (*Id*.)  Williams had a meeting via telephone with Defendant Rivera, who was the Area Human Resources Director.  (*Id*.)  Rivera was late to the meeting, and "had a very rude and bad attitude," as demonstrated by her reference to Williams as a "cook" even though he was Department Head and Executive Chef.  (*Id*.)  Rivera informed him during the meeting that he failed to take sick leave correctly.  (*Id*.)

Williams claims that during Remington Hospitality's Orientation, the company-wide head of human resources encouraged him "to hire away," but when he hired necessary staff, the company put them on "hold" to enter them into the CPU system.  (*Id*. at 8-9.)  Remington Hospitality then informed Williams that a hiring freeze was in place.  (*Id*. at 9.)  Without enough staff, Williams had to work 28 out of 30 days straight—the only employee who had to do so—

while other employees enjoyed two days off per week.  (*Id*.)  Williams asserts that he was "intentionally singled out" and retaliated against.  He claims the recited basis for termination was merely a pretext where "a chain of events [ ] had happened before this new management company took over, and ultimately inherited another companies [*sic*] liabilities."  (ECF No. 2-1 at 3.)  Willliams states that staff asked "illegal questions about his previous employer" and contends that "all were put to shame when it was within just (3) days prior to this Unlawful Termination" that he was "awarded his DETERMINATION of VICTORY from the VA Agency."² (*Id.* at 9.)

      Williams submitted a complaint with the EEOC on June 3, 2024, alleging race-based discrimination and retaliation.³  (ECF No. 2 at 4.)  The EEOC issued a Notice of Right to Sue Letter on February 27, 2025, and he claims to have received it that same day.  (*Id*.)  Williams

---

² It is not clear what agency or proceeding Williams is referring to. The EEOC complaint relating to Williams's allegations here was filed in June 2024, after his termination in March 2024. Publicly available dockets reflect that Williams filed two duplicative cases in 2023 against a prior employer in the United States District Court for the Eastern District of Virginia, and the District Court ruled that the claims were unfounded. *Williams v. HMSHOST at Washington Dulles Int'l Airport*, No. 23-1258, 2024 WL 3905725, at *3-4 (E.D. Va. Aug. 20, 2024) (dismissing claims of discrimination, retaliation, and hostile work environment alleged under Title VII for failure to state a claim).  He previously sued other employers for discrimination, but it does not appear those were successful, either. *See Williams v. Desert Palace LLC*, No. 20-2021, 2022 WL 3579408, at *1 (D. Nev. Aug. 19, 2022) (dismissing complaint for failure to state a claim under 28 U.S.C. § 1915(e)(2)); *Williams v. Vegas Venture 1 LLC*, No. 20-2022, 2021 WL 3889979, at *2-3 (D. Nev. Aug. 31, 2021); *appeal dismissed*, No. 21-16850, 2022 WL 19843085, at *1 (9th Cir. Dec. 15, 2022) (Order) (denying motion to proceed *in forma pauperis* and dismissing appeal as frivolous).

³ Williams claimed in his EEOC inquiry that: "Unlawful harassment and concerted activities to place me under increased surveillance, and concert interrogations to illegally pry and invade my private/personal life began around October 2023.  I am a federally protected star witness as the whistle blower against a former employer.  This company changed management companies and switched off liability to a new company, in Feb 2024, and this company sought to carry out the final steps of 'a constructive discharge,' and when making the job 'UNREASONABLY' unbearable so I'd quit didn't work I was terminated with a 'pre-text' of attendance." (ECF No. 2-1 at 2.)

filed this Complaint in federal court on May 30, 2025, alleging violations of Title VII, and seeking relief including injunctive relief, various damages, interest, costs, attorneys and expert fees, and a "(2) Year EEOC sanction and or Watchlist for Bad Actor/Employer." (*Id.* at 5.) Since that time, Williams filed an "Motion for Emergency Injunctive Relief" (ECF No. 5), but the Court denied it because he had not demonstrated a likelihood of success on the merits nor a clear showing of immediate and irreparable harm. (*See* ECF No. 6.)

## II.   STANDARD OF REVIEW

Because Williams appears to be unable to pay the filing fee in this matter, the Court will grant him leave to proceed *in forma pauperis*. Accordingly, the Complaint is subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), which requires the Court to screen and dismiss the Complaint if it fails to state a claim. The Court must determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). "[T]he plausibility paradigm . . . applies with equal force to analyzing the adequacy of claims of employment discrimination." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 212 (3d Cir. 2009). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

The Court construes the allegations of a *pro se* litigant liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). This requires the Court to remain flexible, especially considering a litigant's *pro se*

status.  *Id.*  The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.*  However, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Id.*  An unrepresented litigant also "cannot flout procedural rules - they must abide by the same rules that apply to all other litigants." *Id.; see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

### III.   DISCUSSION

Title VII "proscribe[s] discrimination in employment based on several personal characteristics" including race, color, religion, sex, and national origin. *E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 448-49 (3d Cir. 2015) (citing 42 U.S.C. § 2000e-2(a)).  In general, to plead a plausible claim for employment discrimination, a plaintiff must allege that: (1) he is a member of a protected class; (2) he was qualified for the position in question; (3) he suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003).  To survive statutory screening under 28 U.S.C. § 1915(e)(2)(B)(ii), a plaintiff must allege sufficient facts to raise a reasonable expectation that discovery will reveal evidence that his membership in a protected class was "either a motivating or determinative factor" in his employer's adverse employment action against him.  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016); *see also Santos v. Iron Mountain Film & Sound*, 593 F. App'x 117, 119 (3d Cir. 2014) (*per curiam*)

(explaining that to survive a motion to dismiss a plaintiff "cannot merely state that he was discharged due to his national origin" and instead "must plead facts that plausibly connect his national origin to his discharge").

### 1. Claims against Sheets and Rivera

Title VII makes it unlawful for an "employer" to discriminate. 42 U.S.C. § 2000e-2(a)(1); 29 U.S.C. § 623(a). Williams, however, seeks to assert claims under that statute against individuals who are not his employer, namely, Sheets and Rivera, whom he identifies as the Interim General Manager and the Area HR Director, respectively. An "employer," according to the provisions of Title VII, is defined as a "person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person." 42 U.S.C. § 2000e(b). Courts have declined to extend liability under Title VII to individuals, such as Sheets and Rivera, holding the term "employer" as used in those statutes does not encompass individual employees. *Sheridan v. E.I. DuPont de Nemours & Co.,* 100 F.3d 1061, 1078 (3d Cir.1996). Accordingly, the Title VII claims against Sheets and Rivera must be dismissed with prejudice.

### 2. Claims against Remington Hospitality

Even affording it generous construction, Williams's Complaint fails to allege a plausible claim for employment discrimination in connection with his treatment at work or his termination. Although Williams indicates that he is bringing his Title VII claims based on race by checking that box in the form Complaint and noting that he is African American, nowhere else does he assert that his treatment or his termination were based on his race. (*See* ECF No. 2 at 3.) Ticking the box on a form without providing any facts to support the allegation is not sufficient to raise a plausible inference that his treatment at work and/or his termination were motivated by his race. In the absence of such allegations, he has not stated a claim for employment

6

discrimination in violation of Title VII.  *See Culler v. Sec'y of U.S. Veterans Affairs*, 507 F. App'x 246, 249 (3d Cir. 2012) (*per curiam*) (explaining that "[t]he discrimination must be 'because of' the employee's protected status or activity" (quoting *Andreoli v. Gates*, 482 F.3d 641, 644 (3d Cir. 2007)).

Williams has likewise failed to state a plausible claim that he was retaliated against in violation of federal employment law.  A plaintiff seeking to state a claim for retaliation under Title VII must allege that: (1) he engaged in conduct protected by Title VII; (2) the employer took adverse action against him; and (3) a causal link exists between his protected conduct and the employer's adverse action.  *See Connelly*, 809 F.3d at 789.  Williams has not asserted that he engaged in any conduct protected by Title VII during the course of his job which led to his termination.  *See Jenkins v. Ciocca Mgmt., Inc.*, 762 F. Supp.3d 416, 432 (E.D. Pa. 2025) (explaining that "[a]n employee engages in protected activity when he (1) participates in Title VII proceedings or he (2) opposes what an employee reasonably believes to be conduct that is unlawful under Title VII." (citation omitted)).  In any event, his March 2024 termination predates the submission of his June 2024 EEOC complaint, so there could not be retaliation as a result of that Title VII-protected activity.  To the extent that Williams asserts that he was retaliated against "because staff who kept asking all these illegal questions about his previous employer and being Wrongfully Terminated," his vague, conclusory statements fail to provide a causal link between any previous, allegedly-protected activity in 2023, and his 2024 termination by a different employer.  *See Mira v. Argus Media*, No. 15-9990, 2017 WL 1184302, at *8 (S.D.N.Y. Mar. 29, 2017) (rejecting a Title VII retaliation claim and concluding that "the inference that [plaintiff] wishes to draw [is] utterly implausible and somewhat baffling: it is difficult to imagine why one employer would hire and then retaliate against a new employee for

7

having complained about sexual harassment to a *different* employer." (emphasis in original));

*McShane v. Ashcroft,* No. 03-20470, 2004 WL 5561681, at *8 (S.D. Fla. Aug. 31, 2004) (rejecting plaintiff's Title VII retaliation claim, noting that if even if defendant knew about plaintiff's prior Title VII lawsuits against different employers before she was hired, the two-year gap plus being hired with knowledge of the lawsuits precluded a reasonable inference of causation). The Court will accordingly dismiss the Title VII claims against Remington Hospitality for failing to state a plausible claim.[4] *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Williams leave to proceed *in forma pauperis* and will dismiss all claims against Davis Sheets and Yvette Rivera with prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The Court will dismiss the claims against Remington Hospitality without prejudice and will allow Williams to file an

---

[4] Additionally, Williams's claims may be implausible because they appear to be barred by the statute of limitations. A plaintiff filing a civil action under Title VII must file suit within ninety days of receiving a right-to-sue letter from the EEOC. *See* 42 U.S.C. § 2000e-5(f)(1); *Elkadrawy v. Vanguard Grp., Inc.*, 584 F.3d 169, 173 (3d Cir. 2009) ("Section 2000e–5(f)(1) requires that claims brought under Title VII be filed within ninety days of the claimant's receipt of the EEOC right to sue letter."). The United States Court of Appeals for the Third Circuit has "construed this provision to mean that the time for the filing of a complaint begins to run when the plaintiff has notice of the EEOC's decision, which usually occurs on the date he receives a right-to-sue letter from the agency." *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239 (3d Cir. 1999); *see also Ebbert v. DaimlerChrysler Corp.*, 319 F.3d 103, 108 (3d Cir. 2003) ("[T]he statute is clear that a dismissal by the EEOC followed by notice to the person aggrieved are the two events that together start the statute of limitations period."). Williams claims that he received the right to sue letter on February 27, 2025. (*See* ECF No. 2 at 4.) The ninety-day deadline after that date fell on May 28, 2025. It appears that Williams did not file his Complaint directly with the Clerk of the District Court for the Eastern District of Pennsylvania, but it was received by the United States Court of Appeals on May 30, 2025, which was two days after the ninety days passed, and docketed in the District Court as of that date. (*See* ECF No. 2 at 1.) The time limitations set forth in Title VII are not jurisdictional and are subject to equitable tolling, but Williams has not provided any basis to suggest that equitable tolling would be appropriate. *Seitzinger*, 165 F.3d at 239-40 (3d Cir. 1999). In any event, because the claims are otherwise implausible, the Court need not resolve this issue.