IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NATHANIEL M. WILLIAMS,        :
    Plaintiff,        :
            :
    v.        :        CIVIL ACTION NO. 25-CV-2913
            :
REMINGTON HOSPITALITY, *et al.,*        :
    Defendants.        :

**MEMORANDUM**

**PEREZ, J.**                                                                                    **MARCH 30, 2026**

Nathaniel M. Williams commenced this *pro se* civil action alleging claims of

employment discrimination and naming as Defendants Remington Hospitality, David Sheets, and

Yvette Rivera.  He also sought leave to proceed *in forma pauperis*.  In a Memorandum and Order

entered on October 14, 2025, the Court granted Williams *in forma pauperis* status and screened

the Complaint as required by 28 U.S.C. § 1915.  (*See* ECF Nos. 7, 8.)  The Court dismissed all

claims against Sheets and Rivera with prejudice and dismissed the claims against Remington

Hospitality without prejudice, with leave to amend if Williams could cure the defects in his

Complaint.  (*See* ECF No. 7 at 8-9; No. 8 at 1-2.)  Williams has now filed an Amended

Complaint.  (ECF No. 12.)  The Court will dismiss the claims in the Amended Complaint

pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) and for lack of subject matter jurisdiction.

## I.   FACTUAL ALLEGATIONS[1]

The facts alleged in Williams's Amended Complaint are difficult to follow.  As an introduction, Williams states that his lawsuit seeks relief "for a coordinated 'Financial Kill-Switch' executed by Defendants to sabotage Plaintiff's career, healthcare, and a high-value $380,000,000.00 litigation asset."[2]  (Am. Compl. at 1.)  Williams is an African American male Executive Chef.  (*Id*. at 2.)  He began working as Executive Chef and Department Head of the Food and Beverage Department at the Sheraton Suites Philadelphia International Airport in September 2023.  (*Id*. at 1-2.)  At that time, Crescent Hotels managed the property, but Defendant Remington Hospitality took over management in February 2024.  (*Id*.)  Defendant Sheets became the "Task Force General Manager."  (*Id*. at 2, 3.)  Williams claims that he had to "stabilize" an "operational mess" caused by Sheets over three weeks in February.  (*Id*. at 2.)  In March 2024, Defendants fired Williams for cause "within 72 hours of Plaintiff finalizing a $380M litigation asset," by allegedly fabricating "attendance fraud" by Williams.  (*Id*.)  Williams asserts that his official personnel record reflects that he had a 6.5-hour paid-time-off surplus at the time that he was absent.  (*Id*. at 6.)  Williams claims that Sheets manufactured the fraudulent attendance report and that Defendant Rivera acknowledged that Williams had 6.5 hours of paid-time-off, but "intentionally ratified the fraudulent termination."  (*Id*.)

---

[1] The allegations are taken from Williams's Amended Complaint ("Am. Compl.") and attached Exhibits.  (*See* ECF Nos. 12, 12-1.)  The Court adopts the sequential pagination supplied by the CM/ECF docketing system.  Where the Court quotes from the Amended Complaint, capitalization and spelling will be corrected as necessary.

[2] He alternately claims that the "Financial Kill-Switch" decapitalized a $2.2 billion litigation asset.  (Am. Compl. at 2.)

Williams alleges that, "[a]t all times relevant, [he] was a Federally Protected Whistleblower and Plaintiff in a $2.2 Billion litigation matter in the U.S. District Court for the Eastern District of Virginia."[3]  (*Id*.)  He was also purportedly nearing the "final stages of securing $2,000,000.00 in Baker Street Funding, an asset essential to his entrepreneurial transition into the Smokehouse, Real Estate, and Luxury Trade sectors."[4]  (*Id*.)  He claims that the Defendants had actual or constructive knowledge of the pending funding and the $2.2 billion "litigation portfolio," and that the termination of his employment set off a "stability default" in his funding and the "immediate withdrawal of the Baker Street asset."  (*Id*. at 7.)  Williams characterizes the Defendants' actions as a "consecutive kill-switch" to "ensure [Williams] remained 'Harmfully Open' and unable to recover damages from prior employer harms (HMSHost), effectively synchronizing with those harms to obstruct justice."  (*Id*.)  Williams

---

[3] Williams filed cases in the United States District Court for the Eastern District of Virginia, but publicly available dockets and pleadings reveal that $2.2 billion was not at stake in those cases.  Williams filed two duplicative cases in 2023 against a prior employer in the Eastern District of Virginia, and the District Court ultimately ruled that the claims were unfounded. *Williams v. HMSHOST at Washington Dulles Int'l Airport*, No. 23-1258, 2024 WL 3905725, at *3-4 (E.D. Va. Aug. 20, 2024) (dismissing claims of discrimination, retaliation, and hostile work environment alleged under Title VII for failure to state a claim); *Williams v. HMSHost at Washington Dulles Int'l*, No. 23-948 (E.D. Va.) (voluntarily dismissed on Jun. 10, 2024).  He sought $300,000 in money damages in both cases, which were closed in 2024.  *See* No. 23-1258 (ECF No. 1 at 34); No. 23-948 (ECF No. 1 at 42).  He has previously sued other employers for discrimination, but those cases were lodged in United States District Courts in districts other than the Eastern District of Virginia.  They were not successful, either.  *See Williams v. Desert Palace LLC*, No. 20-2021, 2022 WL 3579408, at *1 (D. Nev. Aug. 19, 2022) (dismissing complaint for failure to state a claim under 28 U.S.C. § 1915(e)(2)); *Williams v. Vegas Venture 1 LLC*, No. 20-2022, 2021 WL 3889979, at *2-3 (D. Nev. Aug. 31, 2021), *appeal dismissed*, No. 21-16850, 2022 WL 19843085, at *1 (9th Cir. Dec. 15, 2022) (Order) (denying motion to proceed *in forma pauperis* and dismissing appeal as frivolous).

[4] Williams does not elaborate on what "Baker Street Funding" is, but it appears that he is likely referring to an organization that provides cash advances during the pendency of a lawsuit. *See* Baker Street Funding, Lawsuit Loans, https://bakerstreetfunding.com/lawsuit-loans/ (last visited on Mar. 9, 2026).  According to the website, the "lawsuit loan" funds may be obtained without job verification and are approved based on the strength of the applicant's legal case.  *Id*.

further contends that Defendants engaged in "Human Hacking" and "Social Engineering," that they stalked and harassed him at his home, and that, in October 2025, he reported these activities, which he qualifies as "domestic economic terrorism," to police. (*Id*. at 7, 24.) Williams claims that "[b]ut-[f]or the Defendants' fraudulent acts, Plaintiff would have closed on deeds for multi-unit real estate, finalized acquisitions for luxury vehicles (Bently, Ferrari, Land Rover), and launched the $115,000,000.00 entrepreneurial portfolio detailed in Exhibit G-2." (*Id.* at 8.)

As to his termination, Williams submitted a complaint with the EEOC, which dismissed the charge and issued a Notice of Right to Sue Letter on February 27, 2025. (ECF No. 12-1 at 3.) He claims to have received it that same day. (ECF No. 2 at 4.) Williams filed this civil action on May 30, 2025, alleging violations of Title VII. *Williams v. Remengton* [*sic*] *Hosp.*, No. 25-2913, 2025 WL 2917740, at *2 (E.D. Pa. Oct. 14, 2025). He also filed a "Motion for Emergency Injunctive Relief" (ECF No. 5), which the Court denied, (*see* ECF No. 6). After the denial of his original Complaint, he filed an Amended Complaint in which Williams purports to bring twenty-seven claims, including federal civil rights claims pursuant to 42 U.S.C. §§ 1981, 1985 (Counts I, III, & XXIV), claims under federal criminal statutes, 18 U.S.C. §§ 1513(e), 2511, 2701 (Counts II, XVI, XVII), seventeen apparent claims under state statutory and common laws (Counts IV-XIV, XVIII-XIX, XXI-XXIII, & XXVIII), and several miscellaneous claims such as "Count XXVII: Harmful Social Engineering/Human Hacking" that are not based in any obvious federal or state cause of action (Counts XX, XXV, XXVI, & XXVII).[5] (*See* Am. Compl. at 9-21.) He seeks $172 million in damages, restoration of his professional standing to allow the release of $2 million Baker Street funding plus interest, and an end to the "human hacking." (*Id*. at 25-26.)

---

[5] The Amended Complaint does not contain a Count XV.

## II.    STANDARD OF REVIEW

Because Williams has been allowed to proceed *in forma pauperis*, the Court must screen the Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and dismiss it if it is frivolous, malicious, fails to state a claim for relief, or seeks damages from an immune defendant. *Id.* § 1915(e)(2)(B)(i)-(iii).  A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  The use of the term "frivolous" in § 1915 "embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Id.* Section 1915 accords judges "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless . . . ." *Id.* at 327.  "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible[.]" *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  A claim is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995).

Moreover, the Court must dismiss the Amended Complaint if it fails to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  The Court must determine whether the Amended Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  At this point, the Court accepts all plausible facts alleged in the amended complaint as true, draws all reasonable inferences in the plaintiff's favor, and asks only whether the Amended Complaint contains facts sufficient to state a plausible claim.  *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  "[T]he plausibility paradigm . . . applies with equal force to analyzing

5

the adequacy of claims of employment discrimination." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 212 (3d Cir. 2009). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

The Court construes the allegations of a *pro se* litigant liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* (quoting *Mala*, 704 F.3d at 244). *But see Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) (explaining that a court is not compelled "to act as an advocate to identify any possible claim that the facts alleged could potentially support."). However, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 245).

In addition, the Court must dismiss the action "[i]f the court determines at any time that it lacks subject-matter jurisdiction." Fed. R. Civ. P. 12(h)(3); *Grp. Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues sua sponte"). A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction. *See Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence." (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006))).

## III.    DISCUSSION

In his Amended Complaint, Williams invokes 42 U.S.C. §§ 1981, 1985, and 18 U.S.C. §§ 1513(e), 2511, and 2701 as the bases for this Court's jurisdiction over his civil action. (Am. Compl. at 4, 10.) He also seeks for the Court to exercise supplemental jurisdiction over multiple state law and other claims. For the following reasons, none of his claims may proceed.

### A. Federal Claims

### 1. 42 U.S.C. § 1981 Claim

"To establish a right to relief under § 1981, a plaintiff must show (1) that he belongs to a racial minority; (2) 'an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in' § 1981, including the right to make and enforce contracts." *Pryor v. Nat'l Collegiate Athletic Ass'n*., 288 F.3d 548, 569 (3d Cir. 2002) (quoting *Brown v. Philip Morris Inc.,* 250 F.3d 789,797 (3d Cir. 2001)). "In employment discrimination cases, [§ 1981] claims are subject to the same analysis as discrimination claims under Title VII of the Civil Rights Act of 1964." *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181-82 (3d Cir. 2009).[6] To survive statutory screening under 28 U.S.C. § 1915(e)(2)(B)(ii), a plaintiff must allege sufficient facts to raise a reasonable expectation that discovery will reveal evidence that his membership in a protected class was "either a motivating or determinative factor" in his employer's adverse employment action against him. *Connelly v. Lane Constr. Corp*., 809 F.3d 780, 789 (3d Cir. 2016).

In its prior ruling, the Court concluded that Williams failed to allege a plausible claim for employment discrimination in connection with his treatment at work or his termination. *Williams*, 2025 WL 2917740, at *3-4. The same is true for the Amended Complaint. Williams

---

[6] Williams appears to have abandoned Title VII claims alleged in his original Complaint in favor of § 1981 claims. As the Court instructed before, Title VII only creates liability for employers that violate its provisions and individual employees like Defendants Sheets and Rivera may not be sued under Title VII. *See Sheridan v. E.I. DuPont de Nemours & Co.,*100 F.3d 1061, 1078 (3d Cir. 1996). Section 1981 does not have the same bar. *See Santiago v. City of Vineland*, 107 F. Supp. 2d 512, 541 (D.N.J. 2000). Moreover, as the Court noted in its prior Memorandum, Williams's Title VII claim appears to be barred by the statute of limitations because it was filed more than ninety days beyond the day he received the EEOC's notice to sue letter. *Williams*, 2025 WL 2917740, at *4 n.4.

has alleged that he is African American, so he meets the first criteria for pleading a § 1981 claim. *Pryor*, 288 F.3d at 569. But that is the only criteria he has met. Williams must plausibly allege that Defendants harbored a discriminatory intent when they discharged him from his position in March 2024. *Id.* Yet, while the Amended Complaint brims over with hypotheses related to his termination, no facts alleged in the Amended Complaint support a racially discriminatory motivation for Defendants' actions. Williams provides numerous theories for his termination, including that: his termination constituted a "Financial Kill-Switch" to "sabotage" his career and "a high-value $380,000,000.00 litigation asset," (Am. Compl. at 1); Defendants fired him because he was a "Federal Informant," (*id*. at 3); his firing was "specifically designed" to disrupt his other civil matters pending in the Eastern District of Viginia and to interfere with his access to $2 million in Baker Street Funding (*id*. at 4-5); and the alleged post-termination harassment was directed to prevent Williams from "functioning as a litigant in his federal cases," (*id*. at 7). None of these directly references or indirectly insinuates racial discriminatory intent. And, nothing in the Amended Complaint otherwise suggests that racial discrimination was "either a motivating or determinative factor" in his termination. *Connelly*, 809 F.3d at 789. Like the original Complaint, Williams "has not sufficiently pleaded that his discharge occurred under conditions that suggest unlawful discrimination," so he has failed to plausibly allege an employment discrimination claim in his Amended Complaint. *Santos v. Iron Mountain Film and Sound*, 593 F. App'x 117, 119 (3d Cir. 2014) (*per curiam*) (quotations and citations omitted). Further, to the extent that Williams attempts to make a claim for retaliation, (*see* Am. Compl. at 8), considering that Williams has not pleaded a plausible § 1981 violation, no retaliation claim can stand, either. *Estate of Olivia ex rel. McHugh v. New Jersey*, 604 F.3d 788, 798 (3d Cir.

2010) (citing *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 452 (2008)).  Williams's claim

under § 1981 will be dismissed for failure to state a claim.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### 2.  42 U.S.C. § 1985(3) Claim

42 U.S.C. § 1985(3) creates a cause of action against any two persons who "conspire . . .

for the purpose of depriving, either directly or indirectly, any person or class of persons of the

equal protection of the laws, or of equal privileges and immunities under the laws. . . ."  42

U.S.C. § 1985(3).  To state a plausible claim under § 1985(3) a plaintiff must allege:  "(1) a

conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive,

directly or indirectly, any person or class of persons of the equal protection of the laws; (3) an act

in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any

right or privilege of a citizen of the United States."  *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir.

1997) (citations omitted).  Significantly, "[t]he [statutory] language requiring intent to deprive of

equal protection . . . means that there must be some racial . . . invidiously discriminatory animus

behind the conspirators' action."  *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-

CIO v. Scott*, 463 U.S. 825, 835 (1983) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102

(1971)); *see also Farber v. City of Paterson*, 440 F.3d 131, 136 (3d Cir. 2006) (explaining that

"§ 1985(3) defendants must have allegedly conspired against a group that has an identifiable

existence independent of the fact that its members are victims of the defendants' tortious

conduct"); *Hauptmann v. Wilentz*, 570 F. Supp. 351, 386 (D.N.J. 1983) ("If the conspiracy only

affects the plaintiff individually, the allegations will not satisfy the class-based animus

requirement."), *aff'd sub nom., Appeal of Hauptmann*, 770 F.2d 1070 (3d Cir. 1985).  Williams's

§ 1985(3) claims do not mention any discriminatory animus based on race or class.  Rather,

Williams states that Defendants conspired to target his "ability to litigate," (*see* Am. Compl. at

9

10), and wanted "to cripple Plaintiff's legal momentum," (*see id*. at 19), but nowhere does he assert that a discriminatory animus was behind the Defendants' alleged actions. Moreover, the allegations contained in the Amended Complaint only discuss harms that affected Williams personally.[7] Williams's § 1985(3) claim is not plausible and will be dismissed.

### 3. Claims for Violations of 18 U.S.C. § 1513(e)

Williams attempts to invoke the criminal statute 18 U.S.C. § 1513(e) as a basis for his civil action here, but criminal statutes generally do not give rise to a basis for civil liability. *See Brown v. City of Phila. Office of Human Res.*, 735 F. App'x 55, 56 (3d Cir. 2018) (*per curiam*) ("Brown alleges that the defendants violated various criminal statutes, but most do not provide a private cause of action." (citation omitted)); *Brown v. U.S. Dist. Ct. for the E. Dist. of Pa.*, No. 18-747 (E.D. Pa.) (Apr. 9, 2018 Order at 6 (dismissing claims under 18 U.S.C. § 1589 as "meritless and frivolous")), *aff'd*, 740 F. App'x 239, 240 (3d Cir. 2018) (*per curiam*). Courts in this circuit have specifically held that 18 U.S.C. § 1513 does not recognize a private right of action. *See El v. People's Emergency Ctr.*, No. 19-690, 2021 WL 2823042, at *3 & n.22 (E.D. Pa. July 7, 2021) (citing *Shahin v. Darling*, 606 F. Supp. 2d 525, 539 (D. Del. 2009) ("Section 1513 is the criminal statute for retaliation against a witness, victim, or an informant. A private right of action is not recognized under this criminal statute."), *aff'd*, 350 F. App'x 605 (3d Cir. 2009)); *Christopherson v. Polyconcept, N. Am.*, No. 20-545, 2021 WL 4776889, at *4 (W.D. Pa.

---

[7] In a separate claim, Williams asserts that the Defendants' alleged interference with his accumulation of wealth prevented him from making a $5 million donation to Johnson and Wales University, and thus, the Defendants' actions caused injury to the culinary students at the university. (Am. Compl. at 20.) Not only does it defy plausibility that Defendants conspired to injure Johnson and Wales students through their alleged actions, the culinary students would not qualify as a group targeted with discriminatory animus under § 1985(3). *See Farber*, 440 F.3d at 138 (explaining that "the victim of mere commercial or economic animus" cannot bring a claim under § 1985(3)).

Oct. 13, 2021) (concluding that private-citizen plaintiff could not prosecute federal criminal charge of 18 U.S.C. § 1513(e) and dismissing claim without leave to amend because of futility). Accordingly, the Court will dismiss these claims for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### 4. Claims Under 18 U.S.C. §§ 2511, 2701

Williams alleges claims in which he cites to the Electronic Communications Privacy Act, 18 U.S.C. § 2511 ("the Wiretap Act"), and the Stored Communications Act, 18 U.S.C. § 2701. Williams alleges in his Wiretap Act claim that Defendants "utilized 'Social Engineering' to intercept Plaintiff's private electronic communications to monitor litigation strategy." (Am. Compl. at 16.) He further asserts a violation of the Stored Communications Act when "Defendants accessed Plaintiff's stored data without authorization to execute the 'Kill-Switch' decapitalization." (*Id.*) The Amended Complaint contains no plausible factual support or arguable legal basis for these claims, and the Court will dismiss them as frivolous under § 1915(e)(2)(B)(i).[8] *See Denton*, 504 U.S. at 33; *Deutsch*, 67 F.3d at 1085. Federal courts

---

[8] "The federal Wiretap Act is codified at 18 U.S.C. § 2510 et seq. To plead a prima facie case under the federal Wiretap Act must plausibly allege that the defendant "(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device." *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 135 (3d Cir. 2015) (citation omitted). "To state a claim under the Stored Communications Act, a plaintiff must show that the defendant '(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system.'" *Id.* at 145-46 (citing 18 U.S.C. § 2701(a)). Williams does not mention electronic interference anywhere in his factual synopsis, and his one-line parroting of a legal standard cannot state a viable claim for either violation. Further, no arguable legal basis for either claim exists. The Wiretap Act requires use of a "device" in the interception, but Williams makes no mention of any such device. *Id.* at 135. He cannot state a claim under the Stored Communications Act because that Act requires that illicit "access" is obtained through "a facility"—not "an individual's personal computing device." *Id.* at 146.

routinely dismiss complaints asserting broad-based conspiracies of surveillance, tracking and the like, as factually frivolous under § 1915 where the allegations are fanciful, fantastical, delusional, irrational or wholly incredible. *See, e.g., Caterbone v. Nat'l Sec. Agency*, 698 F. App'x 678, 679 (3d Cir. 2017) (*per curiam*) (dismissing appeal as lacking an arguable basis in fact where underlying allegations were based on plaintiff's assertion that he was a "victim of U.S. sponsored mind control and cointelpro harassment program"); *Harley v. City of Phila. City Gov't*, No. 21-3680, 2021 WL 4844156, at *2 (E.D. Pa. Oct. 18, 2021) (dismissing as frivolous Harley's claims based on "a conspiracy by Defendants to target her with wiring, voices, and electrical activity, and to murder her"); *Price v. Fed. Bureau of Investigation*, No. 20-3015, 2020 WL 4368063, at *3 (E.D. Pa. July 30, 2020) (finding plaintiff's allegations to be factually frivolous where plaintiff asserted that "numerous law enforcement agencies, attorneys, prison officials, and medical professionals have used neurological and psychological technology to control the 'four basic groups of his brain and mental functions' and "that the use of this 'technology' and 'mind control' has caused him numerous impairments and drove him to criminal and erratic behavior"). Considering the factually unsupported claims against the backdrop of Williams's other fantastical and illogical assertions in his Amended Complaint, the Court concludes that the electronic interception claims are frivolous. *See Brookins v. County of Allegheny*, 350 F. App'x 639, 642 (3d Cir. 2009) ("A court may discredit allegations that are 'fanciful, fantastic, and delusional' and thus may dismiss a complaint as factually frivolous when the facts alleged 'rise to the level of the irrational or wholly incredible.'" (quoting *Denton*, 504 U.S. at 33)). They will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(i).

## B. Claims Alleged Under State Law

Given that the Complaint fails to state a plausible federal claim upon which relief may be granted, the Court declines to exercise supplemental jurisdiction over any state law claims. *See* 28 U.S.C. § 1367(c); *Henglein v. Informal Plan for Plant Shutdown Benefits for Salaried Emps.*, 974 F.2d 391, 398 (3d Cir. 1992) ("[I]t is well settled that, after disposal of a federal claim, a district court has discretion to hear, dismiss, or remand a supplemental claim for which there is no independent basis for federal subject matter jurisdiction." (citations omitted)). The only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a federal district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." Section 1332(a) requires "complete diversity between all plaintiffs and all defendants," which "means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Benefit Life Co.*, 800 F.3d at 104 (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010)).

Williams has not adequately pleaded diversity jurisdiction. He fails to plead his own state citizenship in the Amended Complaint; however, he has attached his EEOC Right to Sue Letter, which contains a Philadelphia, Pennsylvania address that matches the address on the Court's docket, which suggests that he is a citizen of Pennsylvania. (ECF No. 12-1 at 3.) Yet Williams has not pleaded the citizenship of Remington, Sheets, or Rivera. He contends only that the relevant facts occurred in Philadelphia, which is insufficient to plead citizenship of any defendant. That fact may make it more likely that at least one of the Defendants is a Pennsylvania citizen, which would destroy the basis for diversity jurisdiction. *Lincoln Benefit*

*Life,* 800 F.3d at 104. The state law claims will be dismissed for lack of subject matter jurisdiction.

## C. Miscellaneous Claims

Williams includes several claims which appear to be neither federal nor state causes of action. (*See* Am. Compl., Counts XX ("Tort of Spoliation of Evidence"), XXV ("Spoliation of Evidence"), XXVI ("Sabotage of the Chef John W. Dorney Universal Legal Fund"), & XXVII ("Harmful Social Engineering/'Human Hacking'").) To the extent that these claims could be considered state law claims, the court would lack jurisdiction over them for the reasons just stated. Further, to the extent Willaims has attempted to assert federal claims, the Court would lack subject matter jurisdiction over these counts because they are "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 89 (1998) (citations omitted). The Court will dismiss the miscellaneous claims for lack of subject matter jurisdiction.

## D. No Further Leave to Amend Will Be Granted

In any event, the Court concludes that further amendment would be futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112-113 (3d Cir. 2002) ("[D]ismissals of frivolous claims do not require leave to amend due to the long tradition of denying leave to amend . . . when amendment is inequitable or futile."). Williams states that the factual basis for his non-federal claims "all stem from the same 72-hour 'Kill-Switch' window." (Am. Compl. at 4.) He contends that the Defendants—none of whom are alleged to be parties to his prior litigation—devised a so-called "Kill-Switch" plan "to sabotage a Federal Case Load in the Eastern District of Virginia (EDVA)," even though, as the Court noted above in a footnote, the dockets reveal

14

that Williams filed no cases of merit in Virginia. (*Id*. at 4-5.) Williams nevertheless contends that his case(s) in the Eastern District of Virginia were valued at $2.2 billion (or, alternately, $380 million). (*Id*. at 1-2.) He alleges that his employment termination was orchestrated to "sabotage" $2 million in advance funding based on litigation in Virginia, which court dockets show contained no merit and sought $300,000 in damages. (*Id*. at 5.) Although the Court must accept *plausible* facts as true at this stage of the litigation, it need not accept allegations that are plainly illogical and nonsensical, which these are. *See, e.g., Brookins*, 350 F. App'x at 642 (stating that the court may discredit allegations that are "fanciful, fantastic, and delusional"). No further amendment will be granted. *See Bliss v. Zimmerman*, No. 25-7173, 2026 WL 489651, at *2 (E.D. Pa. Feb. 20, 2026) ("Given the frivolity of his underlying allegations, no leave to amend will be granted." (citing *Grayson*, 293 F.3d at 112-13)).

## IV. CONCLUSION

For the foregoing reasons, all federal claims will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) as frivolous and for failure to state a claim. All state law and miscellaneous claims will be dismissed for lack of subject matter jurisdiction. Further leave to amend will not be granted. *See Grayson*, 293 F.3d at 112-13 (providing that leave to amend may be denied when claims are dismissed for frivolousness because amendment would be inequitable or futile); *Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (concluding that amendment by pro se litigant would be futile when litigant "already had two chances to tell his story"). To the extent that Williams requests appointment of counsel, (*see* ECF No. 12 at 25-26), that request is denied.

A final dismissal order follows, which shall be docketed separately in accordance with Federal Rule of Civil Procedure 58(a).

BY THE COURT:

**HON. MIA R. PEREZ**